UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

**CIVIL ACTION NO. 14-38-DLB**

**AMY SUSAN LAY**                                                                                             **PLAINTIFF**

**vs.**                               **<u>MEMORANDUM OPINION & ORDER</u>**

**CAROLYN W. COLVIN, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                         **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Amy Lay filed an application for supplemental security income on June 10, 2011, alleging disability as of July 28, 1990.[1] (Tr. 18). Plaintiff's application was denied initially and upon reconsideration. (*Id.*) On September 13, 2012, Administrative Law Judge Bonnie Kittinger conducted an administrative hearing at Plaintiff's request. (*Id.*) On December 21, 2012, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to benefits. (Tr. 29). This decision became the final decision of the Commissioner when the Appeals Council denied review on January 22, 2014. (Tr. 1).

---

[1] At the hearing on September 13, 2012, Plaintiff amended her alleged onset date to June 10, 2011.

1

On February 24, 2014, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 10, 11).

## II.  DISCUSSION

### A.  Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110

(6th Cir. 1994).

## B. The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 20). At Step 2, the ALJ found that Plaintiff's mental impairment was "severe" within the meaning of the regulations. (*Id.*) The ALJ also found that Plaintiff's remaining impairments were non-severe, which include headaches and pituitary problems; vision impairment; anxiety, depression and memory problems; and back pain. (Tr. 20-22).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 22-24). Specifically, the ALJ found that Plaintiff's mental impairment does not meet the requirements of Listing 12.05C (intellectual disability) because she did not demonstrate deficits in adaptive functioning, and she does not have other impairments which impose additional and significant work-related limitations. (Tr. 22). The ALJ also found that Plaintiff's mental impairment does not meet the requirements of Listing 12.02 (organic mental disorders) or 12.06 (anxiety-related disorders) because it did not cause at least two "marked" limitations, or one "marked" limitation along with "repeated" episodes of decompensation; did not cause a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands would be predicted to cause the individual to decompensate; and did not cause the inability to function outside a highly supported living arrangement. (Tr. 23). Finally, the ALJ found that Plaintiff's visual impairment does not satisfy Listing 2.02 because Dr. Maryman, a consultative examiner (CE), opined that her eyesight was satisfactory, particularly with the aid of glasses. (Tr.

22).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform medium work, as defined in 20 C.F.R. 416.967(c), with the following restrictions:

> [C]laimant is limited to occupations which do not require exposure to dangerous machinery and unprotected heights. The claimant is able to understand and recall simple instructions and work locations with limited travel or use of public transportation, and would be limited to simple tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general relatively few work place changes. She is able to persist in attention to these tasks for two-hour segments throughout an eight-hour day.  The claimant is limited to occupations requiring only occasional interaction with the public and co-workers and is limited to workplace settings with defined tasks in which she is not required to set independent goals.

(Tr. 24).  Based on this assessment, the ALJ found that Plaintiff was capable of performing her past relevant work as a dining room attendant.  (Tr. 27).

Despite having concluded that Plaintiff was not disabled under Step 4, the ALJ went on to make an alternative finding at Step 5 that there were a significant number of other jobs in the national economy that Plaintiff could perform.  (Tr. 27-29).  The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (Tr. 28).  The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could work as a janitor (10,000+ jobs in Kentucky/1,000,000+ jobs nationally), a dishwasher (3,000+ jobs in Kentucky/200,000+ jobs nationally), a food preparer (1,500+ jobs in Kentucky/150,000+ jobs nationally), a laundry worker (600 jobs in Kentucky/40,000+ jobs nationally), a room cleaner (4,000+ jobs in Kentucky/300,000+ jobs nationally), a hand packager (1,000 jobs in Kentucky/80,000 jobs nationally), a kitchen worker (1,000 jobs in Kentucky/130,000 jobs nationally), and a laundry worker (500 jobs in Kentucky/40,000 jobs

nationally).[2] (*Id.*) Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that she did not have a "disability" as defined under the Social Security Act. (*Id.*)

**C.    Analysis**

Plaintiff presents six arguments on appeal. First, she contends that the ALJ failed to properly explain why her mental impairment does not meet or equal the criteria under Listing 12.05C. Plaintiff's second, third and fourth arguments state that the ALJ erred in finding that certain other impairments do not constitute severe impairments, or additional and significant work-related limitations. Fifth, Plaintiff argues that the ALJ erred at Step 4 by concluding that she was capable of performing past relevant work as a dining room attendant even though her wages never reached the numerical threshold of substantial gainful activity. And sixth, Plaintiff avers that the ALJ's error at Step 4 was not harmless because the hypothetical posed to the VE was inaccurate.

**1.    The ALJ's finding that Plaintiff's mental impairment does not satisfy Listing 12.05C is supported by substantial evidence.**

If a claimant's impairment matches or is equal to one of the impairments listed in Appendix 1, "he qualifies for benefits without further inquiry." *Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). For an impairment to match or equal a listing, "it must meet *all* of the specified medical criteria." *Id.* at 530 (emphasis in original). In order to demonstrate an intellectual disability under 12.05C, a claimant is required to prove each of the following:

---

[2] There are two separate listings for the position title "Laundry Worker," each with different DOT numbers and exertional levels. (Tr. 28).

5

(1) that she experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period" (i.e., the diagnostic description); (2) that she has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) that she suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *West. v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 697-98 (6th Cir. 2007) (quoting 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C).[3]

Plaintiff's argument that the ALJ failed to properly analyze Listing 12.05C states as follows:

> The ALJ did not adequately address the evidence which establishes the existence of mental retardation as reflected by proof of deficits in adaptive functioning during the developmental period and evidence which meets the diagnostic description of Listing 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1. Accordingly, the ALJ failed to properly analyze the listed impairment for which the claimant qualifies and failed to provide a sufficient explanation as to how she reached the conclusion that the evidence fails to satisfy the listed impairment.

(Doc. # 11 at 10).

In support, Plaintiff emphasizes that she obtained an IQ score of 61 during her

---

[3] Listing 12.05C, which has replaced the term "mentally retarded" with "intellectual disability," provides in pertinent part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

6

consultative examination with Dr. Maryman, who opined that her performance was indicative of mild mental retardation. (Tr. 246). Plaintiff also observes that Drs. Maryman and Waltrip (another CE) described her as intellectually slow. (Doc. # 11 at 13). Finally, Plaintiff notes that she had special assistance throughout middle school and high school, has never been able to read at the fifth grade level, and has not received a driver's license.[4] (*Id.*) Based on these arguments, Plaintiff submits that "ALJ Kittinger improperly rejected the validity of the current test results, and she overlooked evidence which establishes deficits in adaptive functioning initially manifested prior to the end of the developmental period." (Doc. # 11 at 14).[5]

Adaptive functioning refers to a claimant's effectiveness in areas such as social skills, communication and daily living skills. *West*, 240 F. App'x at 698. The ALJ's conclusion that Plaintiff does not have deficits in these areas is supported by substantial evidence. With respect to daily living skills, the ALJ emphasized that Plaintiff does some laundry and cleaning, helps with meals, cares for her dog and shops for personal items. (Tr. 23). Up until two months before Dr. Maryman's examination, Plaintiff also had an instructional driving permit. (*Id.*) As to social skills, the ALJ noted that Plaintiff lives with

---

[4] Plaintiff testified that the only special education she ever received was one year of a special math class during middle school. Although she had a teacher's aide during her three years of high school, she took only regular classes, and earned mostly C's. (Tr. 43).

[5] Plaintiff also argues that the ALJ violated 42 U.S.C. § 405(b)(1) by failing to "adequately articulate reasons to reject the applicable Listing." (Doc. # 11 at 12). Plaintiff submits that this constitutes legal error and therefore the Court is required to review the ALJ's decision *de novo*. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). The Court disagrees. As discussed below in great detail, the ALJ's decision incorporates a plethora of record evidence, makes numerous factual findings and offers legal reasoning in understandable language. The ALJ's decision regarding 12.05C clearly adheres to Section 405(b)(1), and, as a result, the Court will review this decision under the substantial evidence standard, not *de novo*.

her father, brother and sister, and has reported no difficulties with this arrangement. (*Id.*) She has a boyfriend with whom she watches movies, goes out for meals and visits the lake. (*Id.*) At one time, Plaintiff and her boyfriend were attempting to conceive. (*Id.*) And regarding communication, Dr. Maryman observed that Plaintiff's "speech showed pretty good articulation and fluency." (Tr. 245). Dr. Waltrip remarked that she was "somewhat restricted by her slow understanding, but [communication] was eventually successful." (Tr. 254). He noted further that Plaintiff had no limitations in hearing or speaking. (*Id.*)

The ALJ's conclusion was also guided by the opinion of Dr. Marvin Blase, a state agency review examiner who disagreed with Dr. Maryman's diagnosis of mild mental retardation. In explaining why, Dr. Blase emphasized that Plaintiff worked for 18 months as a waitress and quit because of physical issues, not mental difficulties. Likewise, he noted that Plaintiff's decision to drop out of school in the eleventh grade was driven by vision problems and headaches; again, not cognitive disabilities. (Tr. 75). Based on these observations, Dr. Blase reasonably found that Plaintiff's work and academic history showed a lack of the requisite deficits in adaptive functioning. *See Justice v. Comm'r Soc. Sec. Admin.*, No. 12-3150, 2013 WL 645957, at *4 (6th Cir. Feb. 22, 2013) ("The ALJ's findings provide substantial evidence for the conclusion that Justice did not display a deficit in adaptive functionally initially manifested during the developmental period, based on the record evidence of Justice's work history and education.").

Plaintiff criticizes the ALJ for relying on Dr. Blase's opinion because he was a non-examining source. However, the notion that an examining source (Dr. Maryman) should be given more weight than a non-examining source (Dr. Blase) is not a bright-line rule. "A non-examining physician's opinion may be accepted over that of an examining physician

when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians." *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 302 (6th Cir. 2001). Because Dr. Blase clearly explained his disagreement with Dr. Maryman's diagnosis, the Court finds it was not improper for the ALJ to rely on Dr. Blase's determinations.

Plaintiff also contends that Dr. Blase's opinion should be disregarded because he is not licensed in Kentucky. Relying on *Turner v. Comm'r of Soc. Sec.,* Case No. 6:03-CV-322-GWU (E.D. Ky. June 9, 2004), Plaintiff asserts that "the agency requires physicians to be properly licensed in the state where the examination occurs." (Doc. # 13 at 3). Plaintiff's assertion is incorrect. The decision to remand in *Turner* was based on 20 C.F.R. § 404.1616, which requires that a *psychological consultant* be licensed "by the State in which he or she practices." Dr. Blase, however, is not a psychological consultant; he is a non-examining source, and, according to his signature on the Disability Determination Report, a medical doctor. (Tr. 75). Thus, his qualifications are governed by § 404.1513(a). In order to be an acceptable medical source under § 404.1513(a), a medical doctor need only be "[l]icensed." Because Dr. Blase is licensed in the state of Georgia, he meets the applicable criteria. (Doc. # 11 at 12 n. 6).

Finally, Plaintiff argues that the ALJ's decision is contrary to *Dragon v. Commissioner of Social Sec.*, 470 Fed. App'x. 454 (6th Cir. 2012). In *Dragon*, the ALJ rejected the claimant's I.Q. scores under the second prong of 12.05C, even though they satisfied the requisite numerical threshold. *Id.* at 461-63. On appeal, the Sixth Circuit reversed the ALJ's decision because it ignored many of the CE's clinical observations, which were consistent with intellectual disability. *Id.* Based on factual similarities with

*Dragon*, Plaintiff submits that the same rationale should be applied in this case. However, Plaintiff overlooks one key distinction: here, the ALJ never rejected her I.Q. scores. In fact, the ALJ conceded the second prong and based her decision instead on the absence of adaptive functioning deficits under the first prong. "In the instant case, the claimant obtained a *valid* full-scale IQ score of 61 . . . however, her adaptive functioning disputes a diagnosis of [mild mental retardation]." (Tr. 22) (emphasis added). Thus, Plaintiff's reliance on *Dragon* is misplaced.[6]

Having found substantial evidence that Plaintiff does not have deficits in adaptive functioning, and because the arguments discussed above are without merit, the Court will uphold the ALJ's decision that Plaintiff's mental impairment does not meet or equal the criteria under Listing 12.05C.

### 2. Plaintiff's second, third and fourth arguments are legally irrelevant.

The Sixth Circuit has consistently held that when a claimant passes the second step (meaning at least one impairment was found to be severe), and her remaining impairments are properly considered when assessing RFC, a reviewing court need not decide whether

---

[6] The Court admits to being somewhat confused by Plaintiff's reliance on *Dragon*. Plaintiff cites almost exclusively to the Sixth Circuit's discussion of the validity of IQ scores under the second prong of 12.05C. (Doc. # 11 at 14) (citing to pages 461-63). Perhaps Plaintiff does so in support of her argument that "ALJ Kittinger improperly rejected the validity of the current test results." (*Id.*) But because the ALJ obviously conceded the validity of her I.Q. scores, the Court wonders why Plaintiff would focus on the second prong at all. Out of an abundance of caution, the Court also reviewed the Sixth Circuit's discussion of the first prong, which is more applicable to this case. Similar to Plaintiff's circumstances, in *Dragon*, although the claimant's I.Q. score suggested intellectual disability, the ALJ found no deficits in adaptive functioning. *Dragon*, 470 Fed. App'x at 460. The Sixth Circuit rejected this finding. *Id.* at 461. In doing so, however, the court relied heavily on the claimant's school records, which strongly supported an adaptive deficit in the area of communication. *Id.* Seeing as Plaintiff cannot cite to similarly persuasive evidence, the Court finds that this case is distinguishable from *Dragon* with respect to the first prong as well.

the ALJ erred in finding that those impairments were non-severe. *See Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)) ("Because the ALJ considered these impairments when determining Fisk's residual functional capacity, '[w]e find it unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two."); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) ("[Claimant] cleared step two of the analysis. This caused the ALJ to consider [claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant.").

Plaintiff's second argument states that the ALJ erred in finding that her visual impairment was non-severe. However, the ALJ concluded that Plaintiff's mental impairment was severe, and then properly considered her visual impairment when assessing RFC. (*See* Tr. 24-25). Thus, based on the case law discussed above, Plaintiff's argument is legally irrelevant.

Plaintiff further contends that the ALJ erred in finding that her visual impairment did not constitute an "additional and significant work-related limitation of function" under the third prong of 12.05C. This argument is also beside the point. In order to demonstrate intellectual disability, a claimant must satisfy *all* of the criteria of Listing 12.05C. *Sullivan*, 493 U.S. at 530; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Because the ALJ properly found that Plaintiff did not satisfy the first prong of 12.05C, it makes no difference whether she satisfied the third prong. Accordingly, the Court will not consider this issue any further.

11

Plaintiff's third and fourth arguments are essentially identical to the second argument; the only difference being the alleged impairments. The third argument cites Plaintiff's continuing headaches, while the fourth argument involves her pituitary gland disorder with diabetes insipidus. Again, Plaintiff contends that the ALJ erred in concluding that both impairments were non-severe and did not constitute additional and significant work-related limitations. For the same reasons discussed above, the Court finds these arguments unavailing.

> **3. The hypothetical question posed to the VE was supported by substantial evidence.**

At Step 4, the ALJ decided that Plaintiff was capable of performing her past relevant work as a dining room attendant. The Commissioner concedes that this finding was in error because the ALJ also found that Plaintiff's prior work experience did not constitute substantial gainful activity. *See* 20 C.F.R. § 404.1565(a) ("We consider that your work experience applies when it . . . was *substantial gainful activity*.") (emphasis added). Nevertheless, the Commissioner submits that this error is harmless because the ALJ concluded in the alternative that there are numerous other jobs that Plaintiff can perform. In response, Plaintiff contends that it was not harmless because the jobs cited by the VE were based on an inaccurate hypothetical.

A VE's answer to a hypothetical question constitutes substantial evidence so long as the question accurately portrays the claimant's physical and mental impairments. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). Although a hypothetical must describe "all of [the] claimant's limitations," it need not make "reference to the

claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Here, the hypothetical posed to the VE provides, in pertinent part:

> "[T]hat the person would be limited to simple tasks not performed in a fast-paced production environment and only involving simple work-related decisions, relatively few workplace changes and can persist in attention for two-hour segments. Assume then also the person would be limited to only occasional interaction with the public and co-workers, occasional interaction with workers, coworkers and supervisors. Also assume the person would be limited to workplace settings with defined tasks in which she is not required to set independent goals."

(Tr. 66).

Plaintiff avers that the above hypothetical is "inadequate" because it does not state that her "general learning ability falls below the bottom tenth percentile of the national population." (Doc. # 11 at 18).[7] Plaintiff notes that one of the eight jobs recommended by the VE requires a GLA within the middle third of the population, and thus would not be suitable for someone with intellect in the bottom ten percent. (*Id.* at 19 n. 9). Because the ALJ's denial of benefits rests in part on this job, Plaintiff maintains that she is entitled to relief.[8] (*Id.*)

For several important reasons, the Court is not persuaded by Plaintiff's argument. First, there is no evidence in the record to confirm her GLA. Although Plaintiff submits that her IQ score equates to a GLA in the bottom ten percent, in a recent case in which a claimant made the same supposition, the Sixth Circuit held that she had "improperly

---

[7] General learning ability (GLA) is a measure of "aptitude ability." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 565 n. 6 (6th Cir. 2014). The Dictionary of Occupation Titles (DOT), which ALJs often rely on in deciding if a claimant can perform other work, denotes the required GLA for each job. *Id.*

[8] The position title of the job in question is "Janitor," DOT # 381.678-018. (Doc. # 11 at 19) (Tr. 28).

13

conflate[d] I.Q. with General Learning Ability." *Griffith*, 582 F. App'x at 565 (6th Cir. 2014). The court then cited several other cases holding that a claimant's GLA does not correlate to her I.Q. score. *Id.* at n. 7.

Second, Plaintiff has failed to establish that an ALJ *must* communicate the claimant's GLA or I.Q. score when posing a hypothetical to the VE. The authority that Plaintiff cites to support this proposition is either non-binding, factually distinct from the case at hand, or both.[9] In *Sizemore* and *Cody*, for instance, *all* of the jobs listed by the VE required a GLA that exceeded the claimant's. By contrast, in this case, the VE identified eight jobs overall and Plaintiff has noted only one that requires a GLA in excess of her own. Thus, presumably, there are seven other jobs, and literally thousands of positions across the U.S. and Kentucky, which Plaintiff concedes are suitable based on her GLA.

Finally, and most importantly, even without her GLA or I.Q. score, the hypothetical posed to the VE quite accurately portrays Plaintiff's mental impairments. As noted above, the ALJ carefully described the many limitations that are attributable to Plaintiff's borderline intellectual functioning, and the ALJ's comments are highly consistent with the record evidence. In light of the standard articulated in *Howard* and *Webb*, the VE's response undoubtedly constitutes substantial evidence. Therefore, the Court finds that the ALJ's error at Step 4 was harmless.

---

[9] Plaintiff relies primarily on three cases: *Sizemore v. Astrue*, Case No. 09-CV-109-KCC, 2010 WL 3001711 (E.D. Ky. July 28, 2010); *Cody v. Comm'r of Soc. Sec.,* Case No. 7:05-CV-612-GWU (E.D. Ky. December 15, 2006); and *Frazee v. Barnhart*, 259 F.Supp.2d 1182 (D. Kan. 2003).

### III. CONCLUSION

The Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence. Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

3. Commissioner's Motion for Summary Judgment (Doc. # 12) is hereby **GRANTED**;

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 5th day of February 2015.



Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\SocialSecurity\MOOs\London\6-14-38 Lay MOO.wpd